## MILTON RAYMOND *vs.* NATHAN RAYMOND, JR.

In this commonwealth, a covenant in a deed of a "good right to sell and convey, does not imply a warranty of absolute title, but only of actual seisin and possession.

A covenant of warranty against "all persons claiming under the grantor," cannot be extended by parol to a general warranty against a title from other sources.

ASSUMPSIT on a promissory note, dated December 15, 1847, for $550, payable in annual instalments. Defence, want and failure of consideration. The note and $200 in money, were given for a deed of certain premises from the plaintiff to the defendant, which, as the defendant claimed, gave him no valid title. The deed "granted, gave, remised, released, and quitclaimed one undivided half of a saw-mill, (held in common with the heirs of David Wyman, deceased,) situated in the easterly part of Westminster, and one half of the mill-yard, and water privilege, &c.; and the whole of a certain shop, near the saw-mill; intending to convey the estate, &c., conveyed to the grantor by Plympton Barnes, by a deed duly recorded in book 343, p. 462, to which reference is made; intending to convey, also, all the machinery and belting attached to said shop." The plaintiff covenanted in said deed that "he had good right to sell and convey the same, and would warrant and defend against all persons claiming by, through, or under him." Deed dated December 15, 1847. At the trial, in the court of common pleas, before *Merrick,* J. it appeared that on the 24th of October, 1838, Plympton Barnes, then the owner in fee of said premises, duly mortgaged the same to Nathan Raymond, senior, for $1,030; and, on the 30th of August, 1839, gave the plaintiff a second mortgage to secure $298.68; and soon afterwards abandoned the premises, and never occupied them afterwards. October 15, 1839, the plaintiff duly took possession to foreclose his mortgage, for breach of condition, and, at the trial, he offered to show that he then went into actual occupation of the premises with the consent of N. Raymond, senior, the prior mortgagee, and with a verbal agreement that he would not interfere with the plaintiff's possession, but that the plaintiff

might pay the interest on the prior mortgage note, and the principal when wanted, and that N. Raymond, senior, should, on such payment, quitclaim his interest in the premises to the plaintiff. He also offered to show that he occupied said estate until 10th February, 1842, when N. Raymond, senior, by an arrangement between the plaintiff and Abijah H. Raymond, quitclaimed his interest in part of the premises conveyed to him by his prior mortgage, namely, in the saw-mill, mill-yard, and privilege of water, to Abijah H. Raymond for $425, which sum, by agreement of all parties, was applied in part payment of the mortgage debt to N. Raymond, senior. This quitclaim deed reserved, however, to the owner of the shop the use of the mill-yard so far as necessary for the use of the shop. Abijah H. Raymond, thereupon, went into exclusive occupation of the saw-mill, but the plaintiff continued to occupy the shop, until his conveyance to the defendant and the giving of the note now in suit, namely December 15, 1847; but during that time, namely, in October, 1842, N. Raymond, senior, took possession of the whole estate to foreclose his mortgage, although he never went into actual occupation. The defendant knew of the existence of the prior mortgage to N. Raymond, senior, and when he took his deed of the plaintiff, the latter verbally agreed to pay said mortgage, and have it discharged, and actually paid towards that object $150, part of the cash payment made by the defendant for the deed.

The plaintiff also offered to prove that the defendant then went into actual occupation of the shop and its privileges, together with the machinery and belting, and has ever since occupied the same. Some time afterwards, namely, on the 4th of January, 1848, N. Raymond, senior, in consideration of $300, quitclaimed to the plaintiff a part of the premises, mentioned in the first mortgage of Barnes to him. The report and decision of the supreme judicial court in the case of said *Nathan Raymond* v. *Abijah H. Raymond,* 7 Cush. 605, together with the papers therein referred to, was introduced and made a part of this case.

For the purpose of showing that all questions and disputes concerning the title acquired under said deed of December

15, 1847, and all demands concerning the consideration for the same were settled and adjusted between these parties, and that the defendant was thereby estopped from setting up this defence, the plaintiff proposed to introduce a bond and agreement under seal, entered into between himself and the defendant, dated February 5, 1849, to refer the whole of said subject-matter to referees, and to abide the decision thereof, and also the award of said referees therein, made and published on the same day, which was as follows, namely: "1st. That said Nathan Raymond, junior, has the privilege of using the water for the shingle shop, as heretofore. 2d. That said Nathan Raymond, junior, has no title to the undivided half of the saw-mill. 3d. That $233.67 be deducted out of the note given by N. Raymond, junior, to Milton Raymond in payment of the premises, and that said $233.67 shall be considered as paid on said note, and that the balance of said note now unpaid, after deducting said $233.67, be, and hereby is, allowed to Milton Raymond as his just due." He also offered evidence tending to prove, that after said award was made and published, the defendant acquiesced therein, and assented to have the said sum of $233.67 indorsed on said note as it now appears thereon, in these words: "February 5, 1849. Indorsed on the within note $233.67, according to award of referees, this day made." Also that the defendant has frequently said that at the time he took said deed from the plaintiff, he (the defendant) well knew that he acquired no title to the saw-mill, but took it in the form he did to trouble his brother Abijah H. But the presiding judge rejected the evidence, and ruled that upon the facts stated, and above set forth, the plaintiff was not entitled to recover, and instructed the jury to find a verdict for the defendant, which they did. The plaintiff alleged exceptions.

*N. Wood,* for the plaintiff.

1. The quitclaim deed from the plaintiff to the defendant was intended only to transfer the possession and all the right and interest which the plaintiff then had by virtue of his mortgage deed from Barnes. *Allen* v. *Holton,* 20 Pick. 458.

2. No ingredient of fraud entered into the transaction.

3. The defendant has not been evicted or disturbed.

4. If any defect existed in the title when the defendant gave the note, he knew it.

5. If, under these circumstances, money had been paid for said quitclaim, it could not be recovered back. *Bates* v. *Delavan*, 5 Paige, Ch. R. 299; 2 Kent Com. 471–473.

6. When the defendant took said deed and gave this note with full knowledge of all the facts and defects, he waived all objections to the title. *Payson* v. *Whitcomb*, 15 Pick. 212; *Cobb* v. *Arnold*, 8 Met. 403.

7. If the plaintiff intended to convey something more than his possession and title, then his covenants are coextensive with the grant, and operate upon him as an estoppel. *Comstock* v. *Smith*, 13 Pick. 116; *Fairbanks* v. *Williamson*, 7 Greenl. 96; *Jackson* v. *Murray*, 12 Johns. 201; *Jackson* v. *Bull*, 1 Johns. Cases, 81.

8. When the plaintiff gave said deed to the defendant, December 15, 1847, he agreed to pay up and remove the first mortgage; and his doing so in a few days afterwards, and taking a release and quitclaim deed, the court will construe both these deeds so as to accomplish the object sought to be obtained. *Marshall* v. *Fisk*, 6 Mass. 24; *Wallis* v. *Wallis*, 4 Mass. 135; *Pray* v. *Pierce*, 7 Mass. 381; *Litchfield* v. *Cudworth*, 15 Pick. 23.

9. The plaintiff has ever been ready and willing, and has offered to transfer any title he has acquired to said shingle shop and appurtenances by the quitclaim deed of January 4, 1848. *Sexton* v. *Wood*, 17 Pick. 110.

10. Evidence of a settlement and adjustment between the parties by means of referees, respecting the title conveyed by said deed, and the consideration paid therefor, ought to have been allowed.

11. It amounted to a compromise, behind which the defendant ought not to go. *Barlow* v. *Ocean Ins. Company*, 4 Met. 270; *Cobb* v. *Arnold*, 8 Met. 403; *Union Bank* v. *Geary*, 5 Pet. 99; *Stapleton* v. *Stapleton*, 1 Atk. 10; *Longridge* v. *Dorville*, 5 Barn. & Ald. 117; *Haigh* v. *Brooks*, 10 Adolph. & Ellis, 309.

12. The decision by reference, acquiesced in, and partially

12*

carried into effect, binds the defendant to pay the balance of the note.

13. And this action upon the note, instead of upon said agreement, is rightly brought. *Baxter* v. *Penniman*, 8 Mass. 133; *Little* v. *Blunt*, 9 Pick. 488; *Ilsley* v. *Jewett*, 3 Met. 439; *Leaper* v. *Tatton*, 16 East, 423.

*E. Washburn*, for the defendant.

1. An entire failure of consideration. The " machinery and belting " have no effect, because, 1st. A mere incident to the estate purchased. 2d. They passed with the real estate as a part of it to the mortgagee. *Winslow* v. *Merchants' Ins. Co.* 4 Met. 306; *Farrar* v. *Stackpole*, 6 Greenl. 154; *Despatch Line, &c.*, v. *Bellamy M. Co.* 12 N. Hamp. 205; *Voorhis* v. *Freeman*, 2 Watts & Serg. 116.

2. The evidence of defendant's declaration of his knowledge, that he acquired no title by his deed to the said mill, not competent as tending to control and contradict the deed. *Hovey* v. *Newton*, 7 Pick. 29; *Noble* v. *Bosworth*, 19 Pick. 314. If the saw-mill formed no part of the consideration of note, it does not aid the plaintiff, the title to the rest of the estate having failed.

3. The use of premises no ground of plaintiff's recovery in this action. 1st. Defendant did not give the note for a mere tenancy at will of part of the estate. 2d. If he occupied the estate, he was not plaintiff's tenant till 1848; but was a trespasser, or liable for use and occupation.

4. The parol promise on plaintiff's part to discharge the mortgage is no ground for sustaining this action. 1st. Being a promise within the statute of frauds. 2d. Having purchased and taken a deed to himself of part of the estate. 3d. Defendant gave his note for the estate and not for a parol promise like the one supposed. *Rice* v. *Goddard*, 14 Pick. 293.

5. The title acquired by plaintiff in 1848 does not aid him. 1st. He only acquired title to part. 2d. The title thus acquired did not enure to defendant by way of estoppel, plaintiff's deed to defendant not containing covenants of warranty. *Somes* v. *Skinner*, 3 Pick. 61. The covenant of right to convey was broken as soon as made. Platt on Covenants, 310. This

cannot work an estoppel as to a newly-acquired title. *Comstock* v. *Smith*, 13 Pick. 116.

The award was inoperative or void.

1. The submission does not show what the " differences " submitted were, nor does the award show that the arbitrators awarded upon the differences that were submitted.

2. The award is uncertain as to the rights of the parties to all the estate except the saw-mill. *Houston* v. *Pollard*, 9 Met. 164. Watson on Arbitration, 120.

3. The award does not cover the whole matter submitted, neither the land nor shop. Watson on Arbitration, 115 *Houston* v. *Pollard*, 9 Met. 164.

4. It requires acts to be done by a stranger. Watson on Arbitration, 108.

5. It does not state what the $233.67 is allowed for. If for loss of saw-mill, it was only allowing a proportionate part of the note for the title to a certain part of the estate then ascertained to have failed.

The finding the balance to be due is of no validity, as they do not award as to the title to the rest of the estate, so that there was no mutuality. Watson on Arbitration, 132. The indorsement of $233.67 did not change the rights of the parties or affect defendant's right to defend as to balance. If plaintiff has any right or remedy under his award, it is by suit on bond. The whole submission and award is void as it related to a question of title between defendant and a stranger. The facts of the case bring it within the principle of *Rice* v. *Goddard*, 14 Pick. 293.

DEWEY, J. The note offered in evidence to maintain this action, on the face of it, is of such a character as *primâ facie* entitles the plaintiff to enforce the payment of it, in a suit at law. The defendant seeks to avoid this liability by showing that the consideration of the note was the receipt from the plaintiff of a deed purporting to convey certain real estate, but which in fact, as the defendant insists, conveyed no title to him. The form of this deed was that the plaintiff " granted gave, remised and released, and forever quitclaimed," a certain undivided half of certain premises, and with a covenant " that

he had good right to sell and convey the same, and that he would warrant and defend the same premises against all persons claiming by, through, or under him." This deed is somewhat peculiar in its form, but, as we suppose, easily settled, as to the proper construction to be given to the covenants contained therein. As to the first of these covenants "that he had good right to sell and convey the same," it must not be confounded with a covenant sometimes found in conveyances, "that the grantor has a good indefeasible title to the same." The covenants so usual in our deeds, that the grantor is "seised of the premises, and that he has good right to sell and convey the same," have long since had a judicial construction in this commonwealth. These covenants do not express or imply a warranty of any absolute title; they relate to the actual seisin of the grantor, and that he has such possession of the premises, as that he may execute a deed thereof. This covenant of a right to convey is synonymous with the covenant of seisin. The actual seisin of the grantor will support both of these covenants, irrespective of his having a good indefeasible title. *Marston* v. *Hobbs*, 2 Mass. 437; *Bickford* v. *Page*, 2 Mass. 455; *Bearce* v. *Jackson*, 4 Mass. 408; *Slater* v. *Rawson*, 6 Met. 444.

The facts offered to be shown by the plaintiff of the actual possession of the premises by the grantor at the time of execution of his deed, and for several years previous of all the premises but the saw-mill, and that upon the execution of the deed, the grantor surrendered his possession to the grantee who thereupon entered, and has continued his possession undisturbed to the present day, taking the profits thereof, would be sufficient to prevent the defendant setting up a breach of the covenant of the right to convey, to defeat a recovery on the note given by the defendant.

The other covenant, that the grantor "would warrant and defend against all persons claiming by, through, or under him," is of no greater effect than to warrant against title acquired through the grantor. It falls short of the general covenant of warranty, and is not a covenant to warrant against a title held by others derived from other independent

sources, and not through the grantor. If however, it were otherwise, and this could be treated as a general covenant of warranty, it would not aid the defence to the note. On the contrary, if this was a general warranty, the subsequently acquired title by the plaintiff of the outstanding estate in Nathan Raymond, senior, would enure to the defendant under the estoppel of the warranty, and so avoid all objections to the consideration of the note.

But it is a more limited covenant, and it does not appear that there has been any breach of it by reason of any outstanding title derived by, through, or under the plaintiff.

But it is said, that there was an outstanding mortgage made by one Plympton Barnes to Nathan Raymond, senior, of a prior date to plaintiff's title, and so the defendant, by reason of that title, may not always enjoy the estate he supposed he purchased, and that which plaintiff ought in equity to assure to him. The case as stated, shows that the defendant knew of the existence of that mortgage when he gave the note and received his deed, and was content to take the parol promise of the plaintiff to pay the notes secured thereby, and discharge the mortgage. But the defendant neglected to guard against it, in the covenant in the deed of the plaintiff. He took a deed with covenants of a very limited character, and having thus taken certain express covenants of his vendor, he must be restricted to them, and cannot now engraft upon them the more extended engagement found in a verbal promise made at the time of executing the deed. A deed with a covenant of warranty against all persons claiming by, through, or under the grantor, cannot be thus extended to a general covenant of warranty against all persons. The misfortune of the defendant is, that he did not require more full covenants of warranty.

The deed which the plaintiff, subsequently to his conveyance to the defendant, received from Nathan Raymond, senior, cannot affect the case. The title acquired by that deed, it is true, will not enure to the benefit of the defendant by way of estoppel, for want of a general covenant of warranty.

It is quite equitable and proper, certainly, that the plaintiff

should, upon the defendant's suffering judgment upon the note, do what, upon the argument of the case, he says he has been ready ever to do, to release to the defendant all the title he acquired by the deed of Nathan Raymond, senior, of date of 4th January, 1848, but that is a matter of arrangement between the parties.

As to the undivided half of the saw-mill, as to which a claim for damages might have existed, the defendant has had full compensation for that, by an indorsement on his note for that damage, of the sum of $233.67, if the plaintiff can show, as he offered on the trial to do, that the defendant assented to have that sum indorsed on the note in accordance with the award of the arbitrators.

We have not thought it necessary to consider further than this, any question as to the effect of the award of the referees upon the present action. Nor have we particularly considered the effect of the evidence proposed, having a tendency to show that Nathan Raymond, senior, received $150, towards payment of the debt secured by his mortgage at or about the time of giving the deed of the plaintiff to the defendant, and thus opened his mortgage for redemption, although it would otherwise have been foreclosed, and so there would be no outstanding title in a third person except as mortgagee, and one that the plaintiff might redeem. It is proper also to say that the case as to this point, and also as to the possession of Nathan Raymond, senior, under his mortgage, after entry for foreclosure, as presented in the former case of *Nathan Raymond* v. *Abijah Raymond*, 7 Cush. 605, presented a different state of facts from those now offered to be shown.

The result is, that the verdict for the defendant must be set aside and a new trial ordered.  *Exceptions sustained.*